| | |
|---|---|
| Judith W. Ross | James E. Van Horn |
| State Bar No. 21010670 | *Admitted Pro Hac Vice 9/5/19* |
| Rachael L. Smiley | BARNES & THORNBURG LLP |
| State Bar No. 24066158 | 1717 Pennsylvania Avenue NW, Suite 500 |
| ROSS & SMITH, PC | Washington, DC 20006-4623 |
| 700 North Pearl Street, Suite 1610 | Telephone: 202-371-6351 |
| Dallas, Texas 75201 | Facsimile: 202-289-1330 |
| Telephone: 214-377-7879 | Email:  jvanhorn@btlaw.com |
| Facsimile: 214-377-9409 | |
| Email:  judith.ross@judithross.com | |
|            rachael.smiley@judithross.com | |

**PROPOSED COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § § § | |
| Rooftop Group International Pte. Ltd., | § § | CASE NO. 19-43402-mxm11 |
| Debtor. | § § § | CHAPTER 11 |

**OBJECTION BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO DEBTOR'S MOTION FOR AN ORDER (A) AUTHORIZING A
PUBLIC AUCTION FOR THE SALE OF CERTAIN ASSETS FREE AND CLEAR
OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (B) APPROVING
PROCEDURES FOR THE SOLICITATION OF BIDS; (C) APPROVING THE
STALKING HORSE BID AND RELATED BID PROTECTIONS; (D) AUTHORIZING
THE SALE OF ASSETS; AND (E) GRANTING RELATED RELIEF**

[Relates to Docket No. 44]

TO THE HONORABLE BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**Committee**") of Rooftop Group International Pte. Ltd. (the "**Debtor**"), by and through its proposed counsel, hereby submits this Objection (the "**Objection**") to the Debtor's *Motion for an Order (a) Authorizing a Public Auction for the Sale of Certain Assets Free and Clear of All Liens, Claims and Encumbrances,*

*(b) Approving Procedures for the Solicitation of Bids; (c) Approving the Stalking Horse Bid and Related Bid Protections; (d) Authorizing the Sale of Assets; and (e) Granting Related Relief* (the "**Bid Procedures and Sale Motion**") [Docket No. 44], and respectfully represents as follows:

## BACKGROUND

1. On April 30, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On June 13, 2019 the Office of the United States Trustee ("U.S. Trustee") filed its Appointment of the Official Unsecured Creditors' Committee [Docket No. 24] thereby appointing the Committee in this Bankruptcy Case.

3. On July 9, 2019 the U.S. Trustee filed its Amended Appointment of the Official Unsecured Creditors' Committee [Docket No. 46], appointing the three members who comprise the Committee in its current form: Brian Duglash, PICA Australia Pty., Ltd., and Begaline Limited.

## OBJECTION

4. The Bid Procedures and Sale Motion contemplates a sale by auction of substantially all of the Debtor's assets, principally including all of the Debtor's patents, trademarks, and other intellectual property and related licenses or other executory contracts and unexpired leases.

5. The Committee and its (recently selected) proposed counsel are moving quickly to get their arms around the Debtor's case, and thus far have identified various reasons why a sale of the Debtor's intellectual property licenses may not be in the best interests of the Debtor's

estate and creditors, at least not at this juncture in the case without having explored alternatives to selling substantially all of the Debtor's assets. For example, based upon the information the Committee has at this point, it is highly unlikely, if not impossible, for the Debtor to reorganize as any kind of a going concern if substantially all of its assets are sold. The Committee understands that ultimately there may simply be no realistic possibility for the Debtor to reorganize, but the Committee submits that there should at least be some degree of substantive discussions with the Debtor and other major stakeholders about any reorganization possibilities. The Committee has already had limited preliminary discussions with the Debtor about some high level plan structures and possibilities, and the Committee is keenly interested in engaging in detailed substantive discussions with the Debtor and other key stakeholders as appropriate to explore a potential framework for a consensual plan in this case.

6. The Committee recognizes that it may ultimately conclude that a sale of substantially all of the Debtor's assets may be in the best interests of the Debtor's estate and creditors, but the Committee submits that in such a case there needs to be appropriate marketing efforts put in place and implemented in order to maximize the value of any such sale. Presently the Debtor's past marketing efforts and anticipated future efforts to market its assets for sale are deficient and wholly inadequate under the circumstances.

7. The Committee also has identified a number of troubling questions and open issues surrounding the multiple connections and relationships between the Debtor's proposed stalking horse bidder, Fortune 8, and the Debtor's principal Darren Matloff, as well as the Debtor itself, and certain debtor affiliates. These connections and relationships include, but may not be limited to, numerous loans, payments, and business transactions among the parties in various forms.

8. There are other deficiencies in the proposed bidding procedures such as the failure to include the Committee as a consultation party on all aspects of the bidding procedures, and the failure to provide the requirement that (a) all bids be provided to the Committee; and (b) the Debtor consult with the Committee in determining who is a "qualified bidder," and, after an auction, who has made the "highest and best bid." The Committee also has concerns and questions about the appropriateness of the proposed expense reimbursement to Fortune 8 (if it ultimately is approved as the stalking horse bidder) under the circumstances. The Committee has had preliminary discussions with the Debtor about these and other concerns the Committee has with the proposed bidding procedures, and is hopeful and reasonably confident that a consensual resolution can be reached in the event the Committee ultimately determines that a sale of the Debtor's assets is in the best interest of the Debtor's estate and creditors.

9. The Debtor has represented to the Committee that it anticipates receiving approximately $600,000 in revenue between now and April 2020 just from the Amax license alone with the first Amax payment due in October 2019. Thus, there is zero prejudice to any party if the Bid Procedures and Sale Motion hearing is continued for a period of time in light of what the Committee believes is an extremely low ball stalking horse bid offer of $500,000. The Debtor itself stated in the Bid and Procedures Sale Motion that revenue from the Amax license alone generates $0.8 to $1.2 million in gross revenue per year. It is readily apparent that regardless of what multiple is applied to this annual revenue stream, the net present value of receiving the revenue stream from this single license far exceeds by many magnitudes the proposed stalking horse bid amount. Accordingly, in the event there is ever any auction for the Debtor's assets, it is entirely unclear to the Committee why a bidder offering only $500,000 is justified in being awarded "stalking horse bidder" status with associated break-up fee protections.

10. In conclusion, the Committee submits that rather than prematurely litigating these issues now, the far better course of action for all parties is to continue the hearing for a period of forty-five (45) days to permit the parties to engage in good faith discussions about the appropriateness of having a sale at all and exploring the possibility of a consensual plan.

## **RESERVATION OF RIGHTS**

11. The Committee expressly reserves the right: (a) to supplement this Objection at any time prior to the hearing on the Bid Procedures and Sale Motion, and (b) to raise additional or further objections to the Bid Procedures and Sale Motion at any hearing on the Bid Procedures and Sale Motion.

## **CONCLUSION**

**WHEREFORE,** for the reasons set forth above, the Committee (a) respectfully requests that the hearing on the Bid Procedures and Sale Motion be continued for a period of forty-five (45) days, without prejudice to the Committee seeking further extensions, and in the alternative, (b) objects to the relief sought in the Bid Procedures and Sale Motion; and (c) respectfully requests that the Court grant such other and further relief as the Court may deem just and proper.

Dated: September 13, 2019                         Respectfully submitted,

**ROSS & SMITH, PC**

By:  /s/ *Rachael L. Smiley*
Judith W. Ross (State Bar No. 21010670)
Rachael L. Smiley (State Bar No. 24066158)
700 N. Pearl Street, Suite 1610
Dallas, TX 75201
Phone: 214-377-7879
Fax: 214-377-9409
Email: judith.ross@judithwross.com
rachael.smiley@judithross.com

-and-

James E. Van Horn (admitted *pro hac vice*)
**BARNES & THORNBURG LLP**
1717 Pennsylvania Avenue NW, Suite 500
Washington, DC 20006-4623
Telephone: 202-371-6351
Facsimile: 202-289-1330
Email: jvanhorn@btlaw.com

**PROPOSED COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served on September 13, 2019 via court ECF Notice on (i) Counsel to the Debtor; (ii) Office of the United States Trustee; and (iii) all parties receiving ECF Notice in this case.

*/s/ Rachael L. Smiley*
Rachael L. Smiley
