# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| Rooftop Group International Pte. Ltd., *et al.*[1] | § | Case No. 19-43402-mxm |
| | § | |
| | § | |
| Debtors. | § | Jointly Administered |

**PLAN OF REORGANIZATION/LIQUIDATION OF**
**ROOFTOP GROUP INTERNATIONAL PTE. LTD., ROOFTOP GROUP USA, INC.**
**AND ROOFTOP GROUP SERVICES (US) INC. PURSUANT TO CHAPTER 11 OF THE**
**BANKRUPTCY CODE PROPOSED BY THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS OF ROOFTOP GROUP INTERNATIONAL PTE. LTD.**
**AND THE CHAPTER 11 TRUSTEE OF ROOFTOP GROUP USA, INC.**
<u>**AND ROOFTOP GROUP SERVICES (US) INC.**</u>

Judith W. Ross
State Bar No. 21010670
Rachael L. Smiley
State Bar No. 24066158
ROSS & SMITH, PC
700 North Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email:  judith.ross@judithwross.com
        rachael.smiley@judithwross.com

James E. Van Horn
(admitted *pro hac vice*)
BARNES & THORNBURG LLP
1717 Pennsylvania Avenue NW, Suite 500
Washington, D.C.  20006-4623
Telephone: 202-371-6351
Facsimile: 202-289-1330
Email:    jvanhorn@btlaw.com

**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ROOFTOP**
**GROUP INTERNATIONAL PTE. LTD., Case No. 19-43402-mxm11**

Daniel J. Sherman
State Bar No. 18241000
SHERMAN & YAQUINTO, L.L.P.
509 N. Montclair Avenue
Dallas, TX 75208-5498
Telephone: 214-942-5502
Facsimile: 214-946-7601
Email: Corky@syllp.com

---

[1] The Debtors in these chapter 11 cases are, including the last four digits of their respective EIN numbers, as follows: Rooftop Group International Pte. Ltd. (no EID), Rooftop Group USA, Inc. (8810) and Rooftop Group Services (US), Inc. (3705).  The mailing address for Rooftop International is 5218 Spruce Street, Bellaire, TX 77401, and the mailing address for the chapter 11 Trustee of Rooftop USA and Rooftop Services is 509 North Montclair Avenue, Dallas, Texas 75208-5498.

**CHAPTER 11 TRUSTEE, ROOFTOP GROUP USA, INC., Case No. 19-44234-mxm11, and ROOFTOP GROUP SERVICES (US) INC., Case No. 19-44235-mxm11**

Dated: June 3, 2020

# Table of Contents

**Page**

INTRODUCTION ......................................................................................................... 1

ARTICLE I DEFINITIONS ......................................................................................... 1

ARTICLE II PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE AND
PRIORITY TAX CLAIMS ........................................................................................... 9

    2.1    Administrative Claims and Priority Tax Claims ............................................ 9
    2.2    Treatment of Administrative Claims Other Than Fee Claims ....................... 9
    2.3    Treatment of Fee Claims ................................................................................ 9
    2.4    Treatment of Priority Tax Claims .................................................................. 9

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS ......................... 10

    3.1    Administrative Claims and Priority Tax Claims are unclassified. For purposes
            of this Plan, all other Claims and Interests are classified as follows: ........... 10

ARTICLE IV TREATMENT OF CLAIMS AND INTERESTS ................................. 10

    4.1    Claims and Interests ..................................................................................... 10
    4.2    Treatment of Class 1 Claims - Priority Claims ............................................ 10
    4.3    Treatment of Class 2 Claims - Secured Claims ........................................... 10
    4.4    Treatment of Class 3 Claims – General Unsecured Claims .......................... 10
    4.5    Treatment of Class 4 – Interests .................................................................. 11
    4.6    Disallowance of Certain Charges ................................................................. 11
    4.7    Voting Classes .............................................................................................. 11
    4.8    Acceptance by Impaired Classes .................................................................. 11
    4.9    Presumed Rejection of Plan .......................................................................... 11
    4.10  How to Vote .................................................................................................. 11

ARTICLE V MEANS FOR PLAN IMPLEMENTATION; GENERAL .................... 11

    5.1    Restructuring or Liquidation ........................................................................ 11
    5.2    Corporate Action .......................................................................................... 12
    5.3    Substantive Consolidation ............................................................................ 12
    5.4    Causes of Actions ......................................................................................... 12
    5.5    Litigation Trust ............................................................................................. 13
    5.6    Post-Effective Date Professional Fees and Expenses ................................... 14
    5.7    Dissolution of Committee ............................................................................. 14
    5.8    Discharge of Trustee ..................................................................................... 14

ARTICLE VI MEANS FOR PLAN IMPLEMENTATION; RESTRUCTURING ..... 14

    6.1    The New Board .............................................................................................. 15

6.2 Restructuring Transactions .......................................................................... 15
6.3 New Secured Financing ............................................................................... 15
6.4 New Common Stock ..................................................................................... 16
6.5 Stockholders Agreement .............................................................................. 16
6.6 Management Incentive Plan .......................................................................... 16
6.7 Senior Management ...................................................................................... 16
6.8 Continued Corporate Existence .................................................................... 16
6.9 Vesting of Assets in the Post-Confirmation Debtor ..................................... 16
6.10 Cancellation of Security Interests and Other Interests.................................. 17
6.11 Exemption from Registration Requirements; Trading of Securities ............. 17
6.12 Organizational Documents ........................................................................... 17
6.13 Exemption from Certain Transfer Taxes and Recording Fees ..................... 17
6.14 Discharge of Claims ..................................................................................... 18

ARTICLE VII MEANS FOR PLAN IMPLEMENTATION; LIQUIDATION .......................... 18

7.1 Corporate Action .......................................................................................... 18
7.2 Plan Administrator ....................................................................................... 18
7.3 Resignation, Death, or Removal .................................................................. 19
7.4 Winding Up Affairs ...................................................................................... 20
7.5 Release of Liens ........................................................................................... 20
7.6 Formation and Powers of the Oversight Committee ..................................... 20
7.7 Dissolution ................................................................................................... 21
7.8 Insurance ...................................................................................................... 22

ARTICLE VIII DISTRIBUTIONS ...................................................................................... 22

8.1 Disbursing Agent .......................................................................................... 22
8.2 Expenses of the Disbursing Agent ............................................................... 22
8.3 Rights and Powers of Disbursing Agent ...................................................... 22
8.4 Delivery of Distributions .............................................................................. 22
8.5 Record Date for Distributions ...................................................................... 22
8.6 Reserve for Plan Expenses ........................................................................... 23
8.7 Objections to Claims ..................................................................................... 23
8.8 Distributions on Disputed Claims ................................................................ 23
8.9 Disputed Claim Reserves ............................................................................. 23
8.10 Unclaimed Property ...................................................................................... 23
8.11 Withholding Taxes ........................................................................................ 24
8.12 Fractional Cents ........................................................................................... 24
8.13 Payments of Less than Twenty-Five Dollars ............................................... 24
8.14 Means of Cash Payment ............................................................................... 24
8.15 Setoffs .......................................................................................................... 24

ARTICLE IX UNEXPIRED LEASES AND EXECUTORY CONTRACTS ............................ 25

9.1 Leases and Contracts .................................................................................... 25
9.2 Rejection Damage Claims ............................................................................. 25

ARTICLE X CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN .............. 25

10.1    Financing Condition ................................................................................................ 25
10.2    Conditions to Consummating a Liquidation ............................................................ 25
10.3    Additional Condition to Consummating a Restructuring ......................................... 25
10.4    Waiver of Conditions .............................................................................................. 26
10.5    Effect of Failure of Condition ................................................................................. 26

ARTICLE XI RETENTION OF JURISDICTION ........................................................... 26

ARTICLE XII MISCELLANEOUS PROVISIONS ......................................................... 27

12.1    Pre-Confirmation Modification ............................................................................... 27
12.2    Post-Confirmation Immaterial Modification ........................................................... 27
12.3    Post-Confirmation Material Modification ............................................................... 28
12.4    Withdrawal or Revocation of the Plan .................................................................... 28
12.5    Binding Effect ........................................................................................................ 28
12.6    Successors and Assigns ........................................................................................... 28
12.7    **Exculpation** ........................................................................................................... 28
12.8    **Voluntary Releases by the Releasing Parties.** .................................................... 28
12.9    **Injunction** ............................................................................................................. 29
12.10   Cramdown ............................................................................................................... 30
12.11   Governing Law ....................................................................................................... 30
12.12   United States Trustee Fees ...................................................................................... 30
12.13   Notices .................................................................................................................... 30
12.14   Non-Voting Equity Securities ................................................................................. 31
12.15   Retiree Benefits ...................................................................................................... 31
12.16   Saturday, Sunday, or Legal Holiday ....................................................................... 31
12.17   Section 1146 Exemption .......................................................................................... 31
12.18   Severability ............................................................................................................ 31
12.19   Headings ................................................................................................................. 31
12.20   Waiver of Stay ........................................................................................................ 32
12.21   No Release by United States Government, Agencies, State or Local
        Authorities. ............................................................................................................. 32

ARTICLE XIII CONFIRMATION REQUEST .............................................................. 32

## INTRODUCTION

The Official Committee of Unsecured Creditors of Rooftop Group International Pte. Ltd., Case No. 19-43402-mxm11, and the Chapter 11 Trustee for Rooftop Group USA, Inc., Case No. 19-44234-mxm11 and Rooftop Group Services (US) Inc., Case No. 19-44235-mxm11, hereby propose the following Plan of Reorganization/Liquidation of Rooftop Group International Pte. Ltd., Rooftop Group USA, Inc. and Rooftop Group Services (US) Inc. pursuant to Chapter 11 of the Bankruptcy Code. The Plan[2] contemplates substantive consolidation of the Debtors for the purposes of voting, allowance of claims, and distributions to holders of Allowed Claims.

The Committee and Trustee seeks to consummate the Restructuring on the Effective Date of the Plan. In the event all conditions precedent to the Effective Date for the Plan necessary to consummate the Restructuring are not timely satisfied or waived by the Committee, the Committee and Trustee shall then seek to consummate the Liquidation on the Effective Date of the Plan.

The Plan sets forth a proposal for the satisfaction of all Claims against the Debtors. Along with the Plan, Creditors entitled to vote will receive a Ballot for voting on the Plan and a Disclosure Statement that provides information concerning the Debtors and the Plan.

The Disclosure Statement accompanying the Plan, and the exhibits thereto, include a discussion of the Debtors' history, business, operations, a summary and analysis of this Plan, the Restructuring, the alternative Liquidation, a summary of what Creditors and Interest Holders can expect to receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed. All Holders of Claims and Interests should read the Disclosure Statement and the Plan carefully—and consult with their counsel and other applicable professionals—before voting to accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number and dollar amount of Creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed. If the Plan is not confirmed, the Bankruptcy Court may order the case dismissed or converted to a liquidating case under Chapter 7 of the Bankruptcy Code, or the Committee or other parties in interest may propose a different plan.

As indicated in the Disclosure Statement, the Committee and Trustee recommend that all holders of impaired Claims that are entitled to vote accept the Plan.

## ARTICLE I
## DEFINITIONS

1.1 As used in this Plan, the following terms shall have the respective meanings specified below. Unless otherwise indicated, the singular shall include the plural.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in Article I of this Plan.

1.2 "**Administrative Claim**" means a Claim under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Case, including, without limitation, any actual and necessary expenses of operating the business of the Debtors or preserving the Estates, and any and all fees and expenses of Professionals to the extent allowed by the Bankruptcy Court under Sections 330, 331, or 503 of the Bankruptcy Code.

1.3 "**Allowed Claim**" or "Allowed [ ] Claim" means: (a) any Claim, proof of which is/was filed with the Bankruptcy Court on or before the applicable Bar Date, or which has been or hereafter is scheduled by a Debtor as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been filed within the applicable period of limitation (if any) for objection to Claims fixed by the Bankruptcy Court, or as to which any objection has been determined by an order or judgment of the Bankruptcy Court (allowing such Claim in whole or in part) that is no longer subject to appeal or certiorari proceedings, and as to which no appeal or certiorari proceeding is pending, or (b) a Claim that is allowed (i) in a Final Order or (ii) pursuant to the terms of the Plan.

1.4 "**Avoidance Actions**" means any and all avoidance, recovery, subordination or similar actions or remedies that may be brought by and on behalf of the Debtors or their Estates or the Committee or the Trustee under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under chapter 5 of the Bankruptcy Code.

1.5 "**Assets**" means any and all real property or personal property assets, rights or interests of Debtors, whether tangible or intangible, and any proceeds realized therefrom, including without limitation, all cash of the Debtors and any right, claim, or cause of action, belonging to the Debtors or their Estates, the Committee or the Trustee.

1.6 "**Assumption Schedule**" means the schedule of Executory Contracts and Unexpired Leases in the Plan Supplement, as may be amended from time to time, setting forth certain Executory Contracts and Unexpired Leases for assumption and assignment to the Post-Confirmation Debtor as of the Effective Date under Section 365 of the Bankruptcy Code.

1.7 "**Ballot**" means the form or forms of ballot that will be distributed along with the Disclosure Statement to Holders of Allowed Claims in classes that are Impaired under the Plan and entitled to vote, with which the Holders of Impaired Claims may use to vote to accept or reject the Plan.

1.8 "**Bankruptcy Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101 et. seq., as now in effect or hereafter amended with regard to the Chapter 11 Case.

1.9 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

1.10 "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the Local Rules of the United States Bankruptcy Court for the Northern District of Texas.

1.11    "**Bar Date**" means the date (or dates) set by the Bankruptcy Court as the last day for filing proofs of Claim or Administrative Claims, as applicable, against the Debtors.

1.12    "**Business Day**" means any day other than a Saturday, Sunday, legal holiday (as such term is defined in Bankruptcy Rule 9006) or any other day that the Bankruptcy Court is closed.

1.13    "**Cash**" means cash and cash equivalents, including, but not limited to, wire transfers, checks, and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.14    "**Causes of Action**" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or under any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date now owned or hereafter acquired by a Debtor or its Estate.

1.15    "**Chapter 11 Cases**" means the Chapter 11 Cases pending for Rooftop Group International Pte. Ltd., Rooftop Group USA, Inc. and Rooftop Group Services (US) Inc.

1.16    "**Claim**" means a claim as defined in Section 101(5) of the Bankruptcy Code or any portion thereof.

1.17    "**Class**" means a category of Claims or Interests that are substantially similar in nature to each other, as classified pursuant to the Plan.

1.18    "**Committee**" means the Official Committee of Unsecured Creditors for Rooftop Group International Pte. Ltd. appointed by the Office of the United States Trustee on June 13, 2019, and as amended on September 27, 2019.

1.19    "**Confirmation**" means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

1.20    "**Confirmation Date**" means the date of entry of an order of the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

1.21    "**Confirmation Hearing**" means that hearing held before the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.22    "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.23    "**Creditor**" means any person or entity having a Claim against a Debtor, including without limitation a Claim that arose on or before the Petition Date or a Claim against a Debtor's Estate of any kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

1.24    "**Debtor**" means a debtor in the Chapter 11 Cases.

1.25    "**Debtors**" means all debtors in the Chapter 11 Cases.

1.26    "**Disbursing Agent**" means, as applicable, (a) the Litigation Trustee or the Plan Administrator, as applicable; (b) such Entity selected by the Litigation Trustee or Plan Administrator to make or facilitate distributions under the Plan; or (c) any other Entity in its capacity as Disbursing Agent under Article VI of this Plan.

1.27    "**Disclosure Statement**" means the disclosure statement respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with Section 1125 of the Bankruptcy Code, all exhibits and annexes thereto, and any amendments or modifications thereof.

1.28    "**Disputed Claim**" means any Claim or Interest not otherwise Allowed or paid pursuant to the Plan or an order of the Bankruptcy Court (a) that has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and that has not been resolved by written agreement of the parties or a Final Order, (b) proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim or Interest was not timely or properly filed, (c) that is disputed in accordance with the provisions of the Plan, or (d) as to which a Debtor, the Litigation Trustee or the Plan Administrator, as applicable, have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or that is otherwise disputed by a Debtor, the Litigation Trustee or the Plan Administrator, as applicable, in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order.

1.29    "**Effective Date**" means the first business day after the Confirmation Date on which each of the conditions precedent satisfied in Article X of the Plan have been timely satisfied or waived.

1.30    "**Entity**" has the meaning set forth in Section 101 of the Bankruptcy Code.

1.31    "**Estate**" means the estate of any Debtor created under Sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

1.32    "**Exculpated Parties**" means collectively, (a) the Committee and its members; (b) Barnes & Thornburg LLP; (c) Ross & Smith, PC; (d) KRyS Global USA, Inc.; (e) Reed Smith LLP; (f) the Trustee; and (g) Sherman & Yaquinto L.L.P.

1.33    "**Executory Contract**" means a contract to which a Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

1.34 **"Exhibit"** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time).

1.35 **"Fee Claim"** means a Claim by a Professional for compensation, indemnification or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Chapter 11 Cases.

1.36 **"Final Order"** means an order entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which (i) no appeal, certiorari proceeding, or other review or rehearing has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review or rehearing has expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

1.37 **"Financing Condition"** has the meaning set forth in Section 10.3 of the Plan.

1.38 **"General Unsecured Claim"** means any Claim against a Debtor other than an Administrative Claim, Priority Tax Claim, Priority Claim, or Secured Claim.

1.39 **"Holder"** means an Entity holding a Claim or Interest.

1.40 **"Impaired"** means with respect to a Claim, an Interest, a Class of Claims, or a Class of Interests, a Claim, an Interest, a Class of Claims, or a Class of Interests that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.41 **"Intercompany Claim"** means any Claim held by a Debtor against another Debtor.

1.42 **"Interest"** means any equity interest in a Debtor and any option, warrant or right, contractual or otherwise, to acquire or relating to any such interest.

1.43 **"Liquidation"** means the liquidation of the Assets to be effectuated by the Plan.

1.44 **"Litigation Trust"** means the trust established pursuant to Section 5.5 of the Plan to, among other things, prosecute Causes of Action, object to Claims and make distributions pursuant to the Plan and the Litigation Trust Agreement.

1.45 **"Litigation Trust Oversight Board"** means the board charged with overseeing the Litigation Trust pursuant to and as set forth in the Litigation Trust Agreement.

1.46 **"Litigation Trust Agreement"** means that certain Litigation Trust Agreement, which shall be included in the Plan Supplement, governing the duties and scope of authority of the Litigation Trustee.

1.47 **"Litigation Trustee"** means KRyS Global USA, Inc., and any successor trustee appointed pursuant to the Litigation Trust Agreement.

1.48 **"Management Incentive Plan"** means a post-emergence management incentive plan for awards to MIP Participants, as contemplated by, and consistent with, Section 6.6 of the Plan.

1.49 **"MIP Participant"** has the meaning set forth in Section 6.6 of the Plan.

1.50 **"Net Proceeds"** means all Cash proceeds realized from Causes of Action and Liquidation, less the fees and any other costs associated with the collection of such proceeds.

1.51 **"New Board"** means the initial board of directors of Rooftop Holding Company and the Post-Confirmation Debtor as designated by the Committee, and as disclosed in the Plan Supplement.

1.52 **"New Common Stock"** means the shares of common stock, par value $0.01 per share, of Rooftop Holding Company issued pursuant to the Plan.

1.53 **"New Common Stock Distribution"** means the issuance of shares representing one hundred percent (100%) of the issued and outstanding New Common Stock to Holders of Allowed Class 3 Claims subject to dilution only on account the Management Incentive Plan.

1.54 **"New Secured Financing"** means the new secured financing facility (or facilities), if any, entered into by the Post-Confirmation Debtor, which will have the terms set forth in the New Secured Financing Documents and as disclosed in the Plan Supplement.

1.55 **"New Secured Financing Documents"** means any documentation necessary to effectuate the New Secured Financing.

1.56 **"Oversight Committee"** means the Committee charged with overseeing the actions of the Plan Administrator pursuant to and in accordance with the terms of the Plan.

1.57 **"Person"** means a natural person or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

1.58 **"Petition Date"** means the date on which each of the Debtors filed their voluntary petitions for relief; in the case of Rooftop Group International Pte. Ltd. on April 30, 2019; and in the cases of Rooftop Group USA, Inc. and Rooftop Group Services (US) Inc. on August 25, 2019.

1.59 **"Plan"** means this Plan of Reorganization/Liquidation of Rooftop Group International Pte. Ltd., Rooftop Group USA, Inc. and Rooftop Group Services (US) Inc. Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Committee and the Trustee, all exhibits hereto, and any amendments or modifications hereof.

1.60 **"Plan Administrator"** means KRyS Global USA, Inc. The Plan Administrator shall be the representative of the Estates for the purposes of administering a Liquidation under the

Plan. The term Plan Administrator shall also include any successor plan administrator duly appointed.

1.61 "**Plan Expenses**" means all actual, reasonable, and necessary costs and expenses to be incurred after the Effective Date in connection with the administration of the Plan at the direction of the Post-Confirmation Debtor, Litigation Trustee and/or Plan Administrator, as applicable.

1.62 "**Plan Expense Reserve Fund**" means the segregated interest bearing account(s) into which all reserved cash for Plan Expenses provided for in the Plan shall be deposited on the Effective Date or as soon thereafter as is practicable.

1.63 "**Plan Schedule**" means a schedule annexed to this Plan or an appendix to the Disclosure Statement (as amended, supplemented or otherwise modified from time to time) and which shall be deemed to include any documents filed as part of the Plan Supplement.

1.64 "**Plan Supplement**" means collectively, the compilation of documents, forms of documents and/or term sheets relevant to the implementation of the Plan, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Exhibits and Plan Schedules, to be filed with the Bankruptcy Court at least seven (7) days prior to the Voting Deadline, all of which are incorporated by reference into, and are an integral part of, this Plan.

1.65 "**Post-Confirmation Debtor**" means the consolidated Debtors in their post-Effective Date status as provided for in this Plan.

1.66 "**Priority Claim**" means any Claim against a Debtor other than an Administrative Claim or Priority Tax Claim entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

1.67 "**Priority Tax Claim**" means any Claim for taxes against a Debtor, including without limitation any interest and penalties due thereon, entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.68 "**Professionals**" means those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Sections 503(b)(4) and (5) of the Bankruptcy Code.

1.69 "**Property**" means all property of the Debtors' Estates of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by a Debtor, or acquired by a Debtor's Estate, as defined in Section 541 of the Bankruptcy Code.

1.70 "**Pro Rata**" means, as of any certain date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.71 **"Released Parties"** means the Exculpated Parties and each of their respective agents, representatives, successors and assigns.

1.72 **"Releasing Parties"** means collectively, and in each case in their capacity as such: (a) the Released Parties; (b) each Holder of a Claim who checked the box on the applicable Ballot indicating that they opt to grant the releases provided in the Plan; and (c) with respect to each of the foregoing Entities in clauses (a) and (b), each of such Entities' current and former officers, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, independent contractors, management companies, investment advisors, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

1.73 **"Restructuring"** means the restructuring and reorganization to be effectuated by the Plan.

1.74 **"Restructuring Transactions"** means the transactions necessary to effectuate the Restructuring.

1.75 **"Rooftop Holding Company"** has the meaning set forth in Section 6.8 of the Plan.

1.76 **"Schedules"** means each Debtor's Schedules of Assets and Liabilities filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007 as they may be amended or supplemented from time to time pursuant to Bankruptcy Rules 1007 and 1009.

1.77 **"Secured Claim"** means all or that portion of a debt existing on the Petition Date, as finally allowed and approved by the Bankruptcy Court, to the extent that such debt is not greater than the value of the assets of a Debtor that the Bankruptcy Court finds are valid security for such debt.

1.78 **"Securities Act"** means the Securities Act of 1933, as now in effect or hereafter amended, and any similar federal, state or local law.

1.79 **"Stockholders Agreement"** means the stockholders agreement, if any, with respect to the New Common Stock to be entered into on the Effective Date, which shall be included in the Plan Supplement.

1.80 **"Trustee"** means Daniel J. Sherman, the Chapter 11 Trustee for Rooftop Group USA, Inc. and Rooftop Group Services (US) Inc.

1.81 **"Unexpired Lease"** means a lease of nonresidential real property to which a Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

1.82 **"Unimpaired"** means any Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.83 **"United States Trustee"** means the office of the United States Trustee for Region 6.

1.84 "**Voting Deadline**" means the deadline established by Final Order of the Bankruptcy Court for receipt of Ballots voting to accept or reject the Plan.

All terms not expressly defined herein have the respective meanings given such terms in Section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code, the Plan, or the Disclosure Statement. Defined terms importing the plural only shall also include the singular where the context requires. Unless otherwise specified herein, any reference to an Entity as a Holder of a Claim includes that Entity's successors, assigns, and affiliates. The rules of construction set forth in Section 102 of the Bankruptcy Code will apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II**
**PROVISIONS FOR PAYMENT OF ALLOWED**
**ADMINISTRATIVE AND PRIORITY TAX CLAIMS**

2.1 <u>Administrative Claims and Priority Tax Claims</u>. Administrative Claims and Priority Tax Claims are not classified in this Plan. The treatment of and consideration to be received by Holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article II of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims. The Debtors' obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.2 <u>Treatment of Administrative Claims Other Than Fee Claims</u>. Except to the extent the Holder of an Allowed Administrative Claim agrees otherwise, each Holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim the full amount thereof, without interest, in Cash, as soon as practicable after the later of (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Claim.

2.3 <u>Treatment of Fee Claims</u>. All Professionals seeking allowance by the Bankruptcy Court of a Fee Claim (a) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by a date that is not later than the date that is forty-five (45) calendar days after the Effective Date; and (b) shall be paid by the Post-Confirmation Debtor, in such amounts as are approved by the Bankruptcy Court (i) upon the later of (x) the Effective Date and (y) ten (10) calendar days after the date upon which the order relating to the allowance of any such Fee Claim is entered, or (ii) upon such other terms as may be mutually agreed upon between the holder of such Fee Claim and the Post-Confirmation Debtor.

2.4 <u>Treatment of Priority Tax Claims</u>. Each Holder of an Allowed Priority Tax Claim shall be paid in respect of such Allowed Priority Tax Claim either (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Claim or (b) such lesser amount as the Holder of an Allowed Priority Tax Claim and the Committee might otherwise agree or (c) at the election of the Post-Confirmation Debtor, in accordance with Section

1129(a)(9)(C) of the Bankruptcy Code, in Cash, in up to twenty equal quarterly installments (and in such event, interest shall be paid on the unpaid portion of such Allowed Priority Tax Claims at a rate to be agreed to by the Post-Confirmation Debtor and the appropriate governmental unit, or, if they are unable to agree, as determined by the Bankruptcy Court), commencing as soon as practicable after the later of (i) the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Claim.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1    Administrative Claims and Priority Tax Claims are unclassified. For purposes of this Plan, all other Claims and Interests are classified as follows:

| Class | Status | Voting Rights |
|-------|--------|---------------|
| Class 1 – Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 2 – Secured Claims | Impaired | Entitled to Vote |
| Class 3 – General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 – Interests | Impaired | Not Entitled to Vote |

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS

4.1    Claims and Interests. The Debtors' obligations in respect of such Claims and Interests shall be satisfied in accordance with the terms of this Plan.  This Plan constitutes one Plan proposed by consolidated Rooftop Group Services (US) Inc. and each Claim filed or to be filed against any Debtor shall be deemed a single claim filed only against the consolidated Rooftop Group Services (US) Inc.

4.2    Treatment of Class 1 Claims - Priority Claims.  Class 1 Claims are Unimpaired. Each Holder of an Allowed Class 1 Claim shall receive either (a) payment in full in Cash as soon as practicable after the later of (i) the Effective Date, and (ii) the date on which such Claim becomes an Allowed Claim or (b) as otherwise agreed by the Holder of such Allowed Class 1 Claim. The Holders of Claims in this Class are not entitled to vote.

4.3    Treatment of Class 2 Claims - Secured Claims.  Class 2 Claims are Impaired.  Each Holder of an Allowed Class 2 Claims shall receive, at the election of the Committee, (i) deferred cash payments having a present value equal to the amount of its Allowed Class 2 Claim and retention of the liens securing such Claim to the extent of the allowed amount of such Claim; (ii) the "indubitable equivalent" of such Allowed Class 2 Claim; (iii) the distribution of the collateral securing such Allowed Class 2 Claim; or (iv) other mutually agreeable treatment on account of such Claim.  The Holders of Claims in this Class are entitled to vote.

4.4    Treatment of Class 3 Claims – General Unsecured Claims.  Class 3 Claims are Impaired. After the payment or reserve for Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, and Plan Expenses, each Holder of an Allowed Class 3 Claim shall receive in respect of such Claim its Pro Rata distribution of (a) Net Proceeds from Causes of Action and (b) either (i) upon a Restructuring, the New Common Stock Distribution; or (ii) upon a

Liquidation, Net Proceeds from such Liquidation. The Holders of Claims in this Class are entitled to vote.

4.5 <u>Treatment of Class 4 – Interests.</u> Class 4 Interests are Impaired. The Holders of Class 4 Interests shall receive no distribution. On the Effective Date, all Class 4 Interests shall be deemed canceled, null and void, and of no force and effect. The Holders of Class 4 Interests are deemed to reject the Plan and are not entitled to vote.

4.6 <u>Disallowance of Certain Charges</u>. All penalties, default interest, loan fees, or late charges that may have accrued or will become due prior or subsequent to the Effective Date are disallowed.

4.7 <u>Voting Classes</u>. Each Holder of an Allowed Claim in Class 2 and Class 3 is entitled to vote either to accept or to reject the Plan. Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

4.8 <u>Acceptance by Impaired Classes</u>. An Impaired Class of Claims shall have accepted the Plan if: (a) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. Class 1 is deemed to have accepted the Plan and is not entitled to vote thereon.

4.9 <u>Presumed Rejection of Plan</u>. The Holders of Class 4 Interests shall not receive any distributions under the Plan and are therefore deemed to reject the Plan and are not entitled to vote.

4.10 <u>How to Vote</u>. A form of Ballot is being provided to creditors in Class 2 and Class 3 that hold Allowed Claims by which Creditors in such Class may vote their acceptance or rejection of the Plan. The Ballot for voting on the Plan gives you one important choice to make with respect to the Plan—you can vote for or against the Plan. To vote on the Plan, please complete the Ballot, and return it in accordance with the instructions. The Committee, through its counsel, will count the Ballots.

**ARTICLE V**
**MEANS FOR PLAN IMPLEMENTATION; GENERAL**

> **The following Sections 5.1-5.8 of the Plan shall be applicable to either a Restructuring or a Liquidation.**

5.1 <u>Restructuring or Liquidation</u>. On the Effective Date, the Debtors will consummate either a Restructuring or a Liquidation in accordance with the terms of the Plan.

    (a) <u>Restructuring</u>. If all of the conditions enumerated in Sections 10.2 and 10.3 are timely satisfied or waived, then on the Effective Date the Debtors shall consummate the Restructuring, including all the terms of Article VI of the Plan.

(b)     Liquidation. If only the conditions enumerated in Section 10.2 are timely satisfied or duly waived, then on the Effective Date the Debtors shall consummate the Liquidation, including all the terms of Article VII of the Plan.

5.2     Corporate Action.   On the Effective Date and without further action by the Bankruptcy Court or any officer, director, or shareholder of a Debtor, each existing officer and director of each Debtor shall be deemed to have resigned their position.

5.3     Substantive Consolidation.   This Plan contemplates, and is predicated upon, the entry of an order, which may be the Confirmation Order, substantively consolidating the Estates and the Chapter 11 Cases for administrative convenience and for purposes of implementing this Plan, voting, assessing whether the standards for Confirmation have been met, calculating and making Distributions under the Plan and filing post-Confirmation reports and paying quarterly fees to the Office of the United States Trustee. Accordingly, on the Effective Date: (i) all Intercompany Claims and Interests held by, between and among the Debtors shall be deemed eliminated, (ii) all assets and liabilities of the Debtors shall be merged or treated as if they were merged with the assets and liabilities of Rooftop Group Services (US) Inc., (iii) any obligation of a Debtor and all guarantees thereof by one or more of the other Debtors shall be deemed to be one obligation of Rooftop Group Services (US) Inc., and (iv) each Claim filed or to be filed against any Debtor shall be deemed filed only against the consolidated Rooftop Group Services (US) Inc., and shall be deemed a single Claim against and a single obligation of the consolidated Rooftop Group Services (US) Inc. On the Effective Date, in accordance with the terms of the Plan, all Claims based upon co-obligations or guarantees of collection, payment, or performance made by the Debtors as to the obligations of another Debtor shall be merged into a single obligation of Rooftop Group Services (US) Inc., and otherwise shall be released and of no further force and effect.

This substantive consolidation shall not otherwise affect (a) the vesting of assets in the Litigation Trust; (b) the right to Distributions from any insurance policies or proceeds of such policies; or (c) the rights of the Litigation Trustee to contest setoff or recoupment rights alleged by creditors on the grounds of lack of mutuality under Section 553 of the Bankruptcy Code and other applicable law. In addition, substantive consolidation shall not, and shall not be deemed to, prejudice any of (i) the Causes of Action, which shall survive for the benefit of the Debtors and their Estates and, upon the Effective Date, for the benefit of the Litigation Trust and its beneficiaries; or (ii) the available defenses to the Causes of Action.

5.4     Causes of Actions.   On the Effective Date, all Causes of Action shall be transferred to and vest in the Litigation Trust and administered by the Litigation Trustee.   The Litigation Trustee shall pursue, settle, or release all reserved Causes of Action for and on behalf of the Debtors' Estates and for the benefit of the Creditors entitled to receive distributions under the Plan. Any Net Proceeds of the Causes of Action received subsequent to the Effective Date shall be deposited into the Litigation Trust for distribution in accordance with the Plan and Litigation Trust Agreement.   The Causes of Action and proceeds therefrom shall be transferred and assigned by the Debtors and their Estates (and deemed transferred) to the Litigation Trust free and clear of all Claims, Liens, charges, encumbrances, and rights and interests, without the need for any Entity to take any further action or obtain any approval and the Litigation Trust shall be authorized as the representative of the Estates to pursue the Causes of Action. In accordance with Section 1123(b)

of the Bankruptcy Code, the Litigation Trustee shall have the exclusive right to commence and pursue, as appropriate, in his/her sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases, any and all Causes of Action, and the Litigation Trustee's right to commence, prosecute, or settle any such Causes of Action shall be preserved notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date.

Unless a Cause of Action against any Entity is expressly waived, relinquished, released, discharged, compromised or settled in the Plan or any Final Order (including the Confirmation Order), all Cause of Actions are expressly reserved and shall be vested in the Litigation Trust pursuant to the Plan, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to any Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, the Plan or the Confirmation Order or any other Final Order (including the Confirmation Order). In addition, the Litigation Trustee reserves the right to pursue or adopt any claims alleged in any lawsuit in which a Debtor is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

An initial list of the Causes of Action shall be included in the Plan Supplement. The failure to list a claim, right, cause of action, suit or proceeding shall not constitute a waiver or release by a Debtor or its Estate of such claim, right of action, suit or proceeding. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against them as any indication that the Litigation Trustee will not pursue any and all available Causes of Action against them. While the initial list included in the Plan Supplement provides notice to certain Persons and Entities of the existence of Causes of Action against them, it is not intended to limit the Causes of Action the Litigation Trustee may prosecute as others may be discovered after the Plan Supplement is filed.

5.5     Litigation Trust.   The Litigation Trust shall be established and shall become effective on the Effective Date. The Litigation Trust shall be governed and administered in accordance with this Plan and the Litigation Trust Agreement. The Litigation Trust Oversight Board shall (i) be selected by the Committee; (ii) consist of three (3) members; (iii) be governed in accordance with the Litigation Trust Agreement; and (iv) be included in the Plan Supplement. The Litigation Trustee shall have the exclusive right to (a) prosecute objections to Claims on behalf of the Post-Confirmation Debtor and compromise or settle any Claims (disputed or otherwise); and (b) commence and pursue Causes of Action as described in Section 5.4 herein. The Litigation Trustee shall have the authority to employ and compensate any and all such professionals as the Litigation Trustee, in his or her sole discretion, deems reasonably necessary to perform his or her duties under the Plan, including any professional that represented a party in the Chapter 11 Cases, without further order of the Bankruptcy Court. The Litigation Trustee may, without application to or approval of the Bankruptcy Court, pay the charges that he or she incurs after the Effective Date for professional fees and expenses that, but for the occurrence of the Effective Date, would constitute Allowed Fee Claims or Allowed Administrative Claims. The Litigation Trustee shall have the authority to obtain financing, including contingent fee arrangements, sufficient to undertake the various actions contemplated by the Litigation Trustee and perform his or her duties

in accordance with the Plan and the Litigation Trust Agreement, without application to or approval of the Bankruptcy Court.

5.6     Post-Effective Date Professional Fees and Expenses.  Professionals that perform post-Effective Date services for the Post- Confirmation Debtor, Litigation Trustee or the Plan Administrator shall provide monthly invoices to the Post-Confirmation Debtor, Litigation Trustee or Plan Administrator, as applicable, describing the services rendered and the fees and expenses incurred in connection therewith, on or before the 20th day following the end of the calendar month during which such services were performed. Professionals who tender such invoices shall be paid by the Post-Confirmation Debtor, Litigation Trustee or Plan Administrator, as applicable, for such services from the Plan Expense Reserve Fund on or after the date that is fifteen (15) days after the submission to the Post-Confirmation Debtor, Litigation Trustee or Plan Administrator, as applicable by such professionals of said monthly invoices, unless, within said fifteen (15) day period, a written objection to said payment is made, in which event such payment shall be made only upon either (a) agreement of the parties or (b) Order of the Bankruptcy Court.

5.7     Dissolution of Committee.  Upon the occurrence of the Effective Date, the Committee shall be dissolved, and each individual member and any retained Professional shall be discharged from any further activities in the Chapter 11 Cases. The Professionals retained by the Committee and the members thereof will not be entitled to assert any Fee Claims for services rendered or expenses incurred after the Effective Date, except for reasonable fees for services rendered, and actual and necessary expenses incurred, in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed and served after the Effective Date for services provided prior to the Effective Date.

5.8     Discharge of Trustee.  Upon the occurrence of the Effective Date, the Trustee's appointment as Chapter 11 Trustee for Rooftop Group USA, Inc. and Rooftop Group Services (US) Inc. shall terminate, and any Professional retained by the Trustee shall be discharged from any further activities in the Chapter 11 Cases. The Professionals retained by the Trustee thereof will not be entitled to assert any Fee Claims for services rendered or expenses incurred after the Effective Date, except for reasonable fees for services rendered, and actual and necessary expenses incurred, in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed and served after the Effective Date for services provided prior to the Effective Date.

## ARTICLE VI
## MEANS FOR PLAN IMPLEMENTATION; RESTRUCTURING

If the Financing Condition **IS** timely satisfied or waived, the Debtors shall consummate the Restructuring transactions and the following Sections 6.1-6.14 of the Plan shall apply.  In that event, Sections 7.1-7.8 of the Plan shall not apply and shall be of no further force or effect.

6.1    The New Board.  On the Effective Date, and without any further action by the Bankruptcy Court or any officer, director, or shareholder of a Debtor, the New Board shall be appointed.

6.2    Restructuring Transactions.  On the Effective Date, the Post-Confirmation Debtor shall be authorized to implement, and shall implement, the Restructuring Transactions.  The actions to implement the Restructuring Transactions may include: (a) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, interest, or right consistent with the terms of the Plan; (b) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state law; (c) obtaining New Secured Financing; (d) issuing or reserving for issuance New Common Stock; (e) entering into employment agreements with members of management; (f) creation of the Litigation Trust and (g) all other actions that the Post-Confirmation Debtor determines to be necessary or appropriate and consistent with the Plan and Confirmation Order.

6.3    New Secured Financing.  The Post-Confirmation Debtor, a Debtor, or Debtors at the direction of the Committee, as applicable, shall be authorized to enter into New Secured Financing Documents on or before the Effective Date in an amount sufficient to consummate the Restructuring.  On the Effective Date, the New Secured Financing Documents shall constitute legal, valid, binding, and authorized obligations of either the Post-Confirmation Debtor or the Debtors as applicable, and following the consummation of the Restructuring Transactions, the New Secured Financing Documents shall constitute legal, valid, binding, and authorized obligations of the Post-Confirmation Debtor, enforceable in accordance with their terms. The financial accommodations to be extended under the New Secured Financing Documents are being extended and shall be deemed to have been extended in good faith and for legitimate business purposes and are reasonable and shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable nonbankruptcy law. On the Effective Date, all of the Liens and security interests to be granted in accordance with the New Secured Financing Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on and security interests in the collateral granted thereunder in accordance with the terms of the New Secured Financing Documents, (c) shall be deemed automatically perfected on the Effective Date (without any further action being required by a Debtor, the Post-Confirmation Debtor, as applicable, the applicable agent, or any of the applicable lenders), having the priority set forth in the New Secured Financing Documents and subject only to such Liens and security interests as may be permitted under the New Secured Financing Documents, and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Debtors, the Post-Confirmation Debtor, as applicable, and the Entities granted such Liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation

Order, and any such filings, recordings, approvals, and consents shall not be required) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

6.4     New Common Stock.   On the Effective Date, Rooftop Holding Company shall issue or reserve for issuance all of the New Common Stock issued or issuable in accordance with the terms of the Plan, subject to dilution on the terms described herein. The issuance of the New Common Stock for distribution under the Plan is authorized without the need for further corporate action, and all of the shares of New Common Stock issued or issuable under the Plan shall be duly authorized and validly issued, fully paid, and non-assessable.

6.5     Stockholders Agreement.   On the Effective Date, the Post-Confirmation Debtor and the Holders of the New Common Stock shall enter into the Stockholders Agreement in substantially the form included in the Plan Supplement if one is included therein. The Stockholders Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of the New Common Stock shall be bound thereby, in each case without the need for execution by any party thereto other than the Post-Confirmation Debtor.

6.6     Management Incentive Plan.   On the Effective Date, up to 10% of the New Common Stock will be reserved for issuance under the Management Incentive Plan to directors, officers, and key employees of the Post-Confirmation Debtor (each, a "***MIP Participant***"). The form, terms, allocation, and vesting applicable to the Management Incentive Plan shall be determined by the New Board.

6.7     Senior Management.   The initial members of the Post-Confirmation Debtor's senior management and initial officers shall be selected by the Committee and included in the Plan Supplement.

6.8     Continued Corporate Existence.   Except as expressly provided in this Plan, each Debtor shall continue to exist as of the Effective Date as a separate corporate entity, with all the powers of such corporate entity, under the applicable law in the jurisdiction in which the Debtor is incorporated.   The Post-Confirmation Debtor shall create a holding company as its immediate parent ("***Rooftop Holding Company***") to act as the issuer of equity securities to the public, including to Holders entitled to receive New Common Stock under the Plan. Therefore, in lieu of shares of the Post-Confirmation Debtor, Holders should expect to receive Rooftop Holding Company stock.   It is currently anticipated that Rooftop Holding Company will conduct no operations and hold no assets other than 100% of the shares of the Post-Confirmation Debtor.

6.9     Vesting of Assets in the Post-Confirmation Debtor.   Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by the Debtors under the Plan shall vest in the Post-Confirmation Debtor free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Post-Confirmation Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Equity Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.   For avoidance of doubt, the Causes of Action shall vest and be

transferred to the Litigation Trust and administered by the Litigation Trustee pursuant to Section 5.4 of the Plan.

6.10    Cancellation of Security Interests and Other Interests.  On the Effective Date, (i) all security interests and/or Liens granted by a Debtor to any Entity shall be automatically released, discharged, terminated, and of no further force and effect; and (ii) all Interests, shall be deemed canceled, null and void, and of no further force and effect.

6.11    Exemption from Registration Requirements; Trading of Securities.  The offering, issuance, and distribution of New Common Stock  issued under the Plan shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act under Section 1145(a)(1) of the Bankruptcy Code.  Except as otherwise provided in the Plan or the governing certificates or instruments, any and all New Common Stock  issued under the Plan will be freely tradable under the Securities Act by the recipients thereof, subject to: (1) the provisions of Section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act, and compliance with any applicable individual state securities laws ("Blue Sky Laws") or foreign securities laws, if any, and any rules and regulations of the Securities Exchange Commission, if any, applicable at the time of any future transfer of such New Common Stock or instruments; (2) the restrictions, if any, on the transferability of such New Common Stock and instruments provided by law; and (3) any other applicable regulatory approvals and requirements.

The Committee, the Trustee, the Debtors and the Post-Confirmation Debtor are not able to determine the availability of state securities laws exemptions for an issuance to a particular Holder. Certain states do not provide exemptions for offerings relying on a federal private placement exemption and, in such states, state securities laws requirements must be met. Accordingly, there can be no assurance that a state securities law exemption will be available in a particular state for a Holder receiving New Common Stock under the Plan, which may necessitate one or more state securities filings on behalf of such Holder to comply with state securities laws.

6.12    Organizational Documents.   Subject to this Article VI, the Post-Confirmation Debtor and Rooftop Holding Company shall enter into such agreements and amend their corporate governance documents to the extent necessary to implement the terms and provisions of the Plan. Under Section 1123(a)(6) of the Bankruptcy Code, the organizational documents of the Post-Confirmation Debtor will prohibit the issuance of non-voting Equity Securities. After the Effective Date, the Post-Confirmation Debtor and Rooftop Holding Company, as applicable, (i) will amend and restate their organizational documents; and (ii) will file their certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the respective states, provinces, or countries of incorporation and the organization documents.

6.13    Exemption from Certain Transfer Taxes and Recording Fees.  To the fullest extent permitted by Section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to the Post-Confirmation Debtor or to any Entity under, in contemplation of, or in connection with the Plan or under: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in a Debtor or the Post-Confirmation Debtor; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional

indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.14 <u>Discharge of Claims</u>. Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims and terminate all Interests of any kind, nature, or description whatsoever against or in a Debtor or any of a Debtor's assets or properties to the fullest extent permitted by Section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the occurrence of the Effective Date, all existing Claims against and Interests in a Debtor, shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Interests shall be precluded and enjoined from asserting against the Debtors, the Post-Confirmation Debtor, or its successors or assigns, or any of its assets or properties, any other or further Claim or Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a Proof of Claim or proof of Interest and whether or not the respective facts or legal bases were known or existed prior to the Effective Date.

## ARTICLE VII
## MEANS FOR PLAN IMPLEMENTATION; LIQUIDATION

> If the Financing Condition **IS NOT** timely satisfied or waived, the Debtors shall consummate the Liquidation transactions and the following Sections 7.1-7.8 of the Plan shall apply. In that event, Sections 6.1-6.14 of the Plan shall not apply and shall be of no further force or effect.

7.1 <u>Corporate Action</u>. On the Effective Date and without further action by the Bankruptcy Court or any officer, director, or shareholder of the Debtors, the Plan Administrator shall be deemed the sole shareholder, officer, and director of the Post-Confirmation Debtor. The Plan will be administered by the Plan Administrator, and all actions taken thereunder in the name of the Post- Confirmation Debtor shall be taken through the Plan Administrator.

7.2 <u>Plan Administrator</u>. On the Effective Date, the Plan Administrator shall begin acting for the Post-Confirmation Debtor in the same fiduciary capacity as applicable to a board of directors, subject to the provisions hereof. The Plan Administrator shall be compensated at his, her, or its normal and customary rates and may be paid without further order of the Bankruptcy Court in accordance with Section 7.6(c). The Plan Administrator shall be entitled to reimbursement for his actual, reasonable, and necessary expenses incurred in connection with the performance of

his duties, including, but not limited to, attorneys' fees and expenses, accounting fees and expenses and other professional fees and expenses, without the need for further Bankruptcy Court approval. The Plan Administrator shall not be liable for any action he or she takes or omits to take that he or she believes in good faith to be authorized or within his or her rights or powers, absent gross negligence or willful misconduct on his or her part. All distributions to be made to Creditors under the Plan shall be made by the Plan Administrator, who shall deposit and hold all Cash in trust for the benefit of Creditors (including Professionals) receiving distributions under the Plan. Subject to the review of the Oversight Committee as described in Section 7.6 of this Plan, the duties and powers of the Plan Administrator shall include the following:

(a)     To continue operating the Debtors' businesses to the extent necessary to conduct an orderly liquidation of the Assets including, but not limited to, the collection and receipt of revenues from contracts and agreements, including, but not limited to, royalty revenue from licensing agreements, or sale of Property, and any other action that the Plan Administrator may deem necessary and appropriate to maximize the value of and return on the Debtors' Assets;

(b)     To exercise all power and authority that may be exercised, to commence all proceedings (including the power to continue any actions and proceedings that may have been commenced by a Debtor or the Committee or the Trustee prior to the Effective Date) that may be commenced, and to take all actions that may be taken by any officer, director, or shareholder of the Post-Confirmation Debtor with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and shareholders, including consummating the Plan and all transfers thereunder on behalf of the Post-Confirmation Debtor;

(c)     To maintain all accounts, make distributions, and take other actions consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Post- Confirmation Debtor;

(d)     To take all steps necessary to terminate the corporate existence of the Debtors;

(e)     To collect the accounts receivable, if any, of the Debtors;

(f)     To employ and compensate any and all such professionals as the Plan Administrator, in his or her sole discretion, deems reasonably necessary to perform his or her duties under the Plan, including any professional that represented a party in the Chapter 11 Cases, without further order of the Bankruptcy Court; and

(g)     To take all other actions not inconsistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable in connection with the administration of the Plan, including, without limitation, filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Cases.

7.3     Resignation, Death, or Removal. The Plan Administrator may be removed by order of the Bankruptcy Court upon notice and motion by an Oversight Committee member for good

cause shown. In the event of removal for good cause shown of the Plan Administrator, or in the event of the death or incapacity of the Plan Administrator, the Oversight Committee shall appoint a successor upon notice, motion, and approval of the Bankruptcy Court. In the event of the resignation of the Plan Administrator, the Plan Administrator shall nominate a successor, which nomination shall be deemed accepted by the Oversight Committee and shall be deemed effective upon the filing with the Bankruptcy Court of a Notice of Appointment of Successor Plan Administrator. The successor Plan Administrator without any further act shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor. In the absence of any pending action to remove a Plan Administrator for good cause, any resigning Plan Administrator, without further action, order, or decree, shall be deemed released by the Post-Confirmation Debtor from any and all Claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence in connection with the Chapter 11 Cases; provided, however, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct or the gross negligence of the Plan Administrator unless the Plan Administrator acted in good faith and in a manner that the Plan Administrator reasonably believed to be in or not opposed to the best interests of the Debtors, and with respect to any criminal action or proceeding, had no reasonable cause to believe the Plan Administrator's conduct was unlawful.

7.4     <u>Winding Up Affairs</u>. On and after the Effective Date, the Plan Administrator may, in the name of the Post-Confirmation Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Plan Administrator may, without application to or approval of the Bankruptcy Court, pay the charges that he or she incurs after the Effective Date for professional fees and expenses that, but for the occurrence of the Effective Date, would constitute Allowed Fee Claims or Allowed Administrative Claims.

7.5     <u>Release of Liens</u>. Except as otherwise expressly provided in the Plan or in any contract, instrument, or other agreement or document created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the Property of a Debtor's Estate shall be released, and all the right, title, and interest of any Holder of such mortgages, deeds of trust, liens, or other security interests shall revert to the Post-Confirmation Debtor and its successors and assigns.

7.6     <u>Formation and Powers of the Oversight Committee</u>.

(a)     The Committee shall select three (3) members of the Oversight Committee and file a notice of such selection with the Bankruptcy Court. As of the Effective Date, the Oversight Committee shall be have be deemed formed. In the event of the resignation or inability to perform for any reason of any member of the Oversight Committee after the Effective Date, the remaining members of the Oversight Committee shall have the right to designate a successor. If an Oversight Committee member assigns its Claim or releases the Debtors from payment of the balance of its Claim, such act shall constitute a resignation

20

from the Oversight Committee. Until a vacancy on the Oversight Committee is filled, the Oversight Committee shall function in its reduced number.

(b) The individual members of the Oversight Committee shall serve without compensation, except that they shall be entitled to reimbursement of reasonable, actual and necessary out-of-pocket expenses (which shall not include any professional fees and expenses for attorneys or other professionals retained by an individual committee member) from the Plan Administrator.

(c) Following the Effective Date, the powers and duties of the Oversight Committee shall include (i) approving any release or indemnity in favor of any third party granted or agreed to by the Plan Administrator; (ii) approving the allowance of any Disputed Claim in excess of $500,000; (iii) approving the sale of any assets by the Plan Administrator in excess of $250,000; (iv) reviewing financial information relating to the Post-Confirmation Debtor, which shall be promptly provided by the Plan Administrator upon request by the Oversight Committee; (v) monitoring distributions to Creditors; (vi) taking such other actions as it deems necessary and appropriate with respect to the implementation of the Plan; (vii) prior to the payment of each invoice for services rendered by the Plan Administrator in his, her, or its capacity as Plan Administrator, reviewing and approving each such invoice, which invoice shall be deemed approved if not objected to by the Oversight Committee within 10 days of receipt; (viii) removing and replacing the Plan Administrator in accordance with Section 7.3 of this Plan; and (ix) performing such additional functions as may be provided for by further order of the Bankruptcy Court entered after the Effective Date.

(d) Following all payments being made to the holders of Allowed Claims under this Plan and the closing of the Chapter 11 Cases, the Oversight Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations to and arising from their service as Oversight Committee members.

7.7 Dissolution. As soon as practicable after the Effective Date and consistent with the orderly sale and liquidation of the Assets, the Debtors shall be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of a Debtor or payments to be made in connection therewith, provided, however, that the Plan Administrator shall be authorized (a) to continue such operations as may be necessary to effect the orderly sale and liquidation of the Assets, (b) to file a Debtor's final tax returns, (c) to file and shall file with the official public office for keeping corporate records in the Debtor's state of incorporation and/or country of incorporation, a certificate of dissolution or equivalent document, and (d) to perform such other and further activities consistent with the Plan. Except to the extent that operations continue consistent with this Section and the Plan, from and after the Effective Date, the Debtors (i) for all purposes shall be deemed to have withdrawn its business operations from any state or country in which it was previously conducting or is registered or licensed to conduct its business operations, and the Debtors shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, (ii) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

7.8     Insurance.   On or as soon as practicable after the Effective Date, the Post-Confirmation Debtor and the Plan Administrator may obtain a fidelity bond or similar insurance in the estimated amount of the Assets on the Effective Date. In addition, the Plan Administrator may obtain (if available) directors' and officers' liability insurance or errors and omission insurance (or equivalent insurance).

## ARTICLE VIII
## DISTRIBUTIONS

8.1     Disbursing Agent.   All distributions under the Plan shall be made by either the Litigation Trustee or the Plan Administrator, as applicable, as Disbursing Agent, or such other entity designated by the Litigation Trustee or Plan Administrator as Disbursing Agent.

8.2     Expenses of the Disbursing Agent.   Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Disbursing Agent (including, without limitation, taxes and reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Litigation Trustee or Plan Administrator, as applicable, in the ordinary course of business.

8.3     Rights and Powers of Disbursing Agent.   The Disbursing Agent shall be empowered to (a) effect all actions necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. In furtherance of the rights and powers of the Disbursing Agent, the Disbursing Agent shall have no duty or obligation to make distributions to any Holder of an Allowed Claim unless and until such Holder executes and delivers, in a form acceptable to the Disbursing Agent, any documents applicable to such distributions.

8.4     Delivery of Distributions.   Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim or Allowed Administrative Expense Claim shall be made at the address of such Holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of a Debtor or its agent, as applicable, unless a Debtor or Post-Confirmation Debtor has been notified in writing of a change of address by the filing of a proof of Claim by such Holder that contains an address for such Holder different than the address of such Holder as set forth on the Schedules.

8.5     Record Date for Distributions.   As of the close of business on the Effective Date, the registers for Claims and Interests shall be closed, and there shall be no further changes in the Holder of record of any Claim.  The Post-Confirmation Debtor, the Disbursing Agent, and the Litigation Trustee or Plan Administrator, as applicable, shall have no obligation to recognize any transfer of Claim or Interest occurring after the Effective Date, and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan only those Holders of record on the registers of Claims and/or Interests, as of the close of business on the Effective Date for distributions under the Plan.

8.6    <u>Reserve for Plan Expenses</u>.  Prior to making any distributions, the Litigation Trustee or Plan Administrator, as applicable, shall set aside, deduct, and reserve an amount of Cash equal to the estimated amount of Plan Expenses in the Plan Expense Reserve Fund. Any Cash in such Plan Expense Reserve Fund that the Litigation Trustee or Plan Administrator, as applicable, deems to be excess prior to the closing of the Chapter 11 Cases shall be distributed to Holders of Allowed Claims and Interests pursuant to Article VIII of the Plan.

8.7    <u>Objections to Claims</u>.  Subject to the express provisions of this Plan, the Litigation Trustee shall have the exclusive authority to file, settle, compromise, withdraw or litigate any objections to Claims. Objections to Claims shall be filed with the Bankruptcy Court and served upon affected Creditors no later than one hundred eighty (180) days after the Effective Date, provided, however, that this deadline may be extended by the Bankruptcy Court upon motion of the Litigation Trustee. Notwithstanding the foregoing, in the event that a party filing any Claim after the applicable Bar Date shall obtain the written consent of the Litigation Trustee to file such Claim late or obtains an order of the Bankruptcy Court upon notice to the Litigation Trustee that permits the late filing of the Claim, then the Litigation Trustee shall have one hundred eighty (180) days from the date of such written consent or order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Litigation Trustee.  Subject to Bankruptcy Court approval, objections to Claims may be litigated to judgment, settled, or withdrawn by the Litigation Trustee.

8.8    <u>Distributions on Disputed Claims</u>.  Distributions with respect to and on account of Disputed Claims will be made as soon as practicable after an order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order rendering such Claim an Allowed Claim, provided that (a) the applicable Creditor shall not receive interest on its Allowed Claim, despite anything contained herein to the contrary, from the date the objection is filed and served to the date of allowance of such Claim, and (b) nothing herein shall require the Disbursing Agent to make a distribution other than in accordance with Section 8.1 of this Plan.

8.9    <u>Disputed Claim Reserves</u>.  On and after the Effective Date, the Litigation Trustee or Plan Administrator, as applicable, shall establish and maintain reserves for all Disputed Claims. For purposes of establishing a reserve, Cash will be set aside equal to the amount that would have been distributed to the Holders of Disputed Claims in such Class had their Disputed Claims been deemed Allowed Claims on the Effective Date or such other amount as may be approved by the Bankruptcy Court upon motion of the Litigation Trustee or Plan Administrator, as applicable. If, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order or by settlement by the Litigation Trustee or Plan Administrator, as applicable, the relevant portion of the Cash held in reserve therefor shall be distributed by the Disbursing Agent to the Creditor. The balance of such Cash, if any, remaining after all Disputed Claims have been resolved, shall be distributed Pro Rata to all Holders of Allowed Claims in accordance with Article VIII of the Plan. No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by settlement or Final Order.

8.10    <u>Unclaimed Property</u>.  Within forty-five (45) days after any distribution, the Disbursing Agent shall file with the Bankruptcy Court and serve upon all parties requesting notice a report of undeliverable distributions. If any distribution remains unclaimed for a period of sixty (60) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to

the Holder entitled thereto, or if such distribution is returned to the Disbursing Agent by the United States Postal Service marked as undeliverable, such unclaimed property shall be forfeited by such Holder absent further order of the Bankruptcy Court. Furthermore, all right, title and interest in and to the unclaimed property shall be held in reserve by the Post-Confirmation Debtor to be distributed to other Creditors in accordance with this Plan. Any distribution that remains unclaimed for a period of sixty (60) days after the Disbursing Agent making the final distribution under the Plan shall, after satisfaction of any accrued but unpaid Plan Expenses, be donated to the American Bankruptcy Institute Endowment Fund, a not-for-profit, non-religious organization dedicated to, among other things, promoting research and scholarship in the area of insolvency.

8.11    <u>Withholding Taxes</u>.  Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes. Allowed Claims of Holders otherwise entitled to receive a distribution under the Plan but who fail to provide a complete IRS W-9 form within thirty (30) days after request is made by the Disbursing Agent shall be entitled to no distribution without further order of the Bankruptcy Court; provided, however, that where any such Holder would be entitled to receive a distribution of $10,000 or more, the Disbursing Agent, Litigation Trustee or Plan Administrator, as applicable, shall seek an order of the Bankruptcy Court expunging the Claim.

8.12    <u>Fractional Cents</u>.  Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

8.13    <u>Payments of Less than Twenty-Five Dollars</u>.  If a Cash payment otherwise provided for by this Plan with respect to an Allowed Claim or Interest would be less than twenty-five ($25.00) dollars (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Disbursing Agent shall not be required to make such payment and such funds shall be otherwise distributed to Holders of Allowed Claims in accordance with Article VIII of the Plan. The Disbursing Agent, Litigation Trustee or Plan Administrator, as applicable, may decide to contribute undistributed funds to the American Bankruptcy Institute Endowment Fund, in accordance with Section 8.10 of the Plan if in the reasonable judgment of the Disbursing Agent, Litigation Trustee or Plan Administrator, as applicable, the cost of calculating and making the final distribution of the remaining distributable funds is excessive in relation to the benefits to Creditors who would otherwise be entitled to such funds, and the Claims of any such Holders shall be entitled to no further distribution without further order of the Bankruptcy Court.

8.14    <u>Means of Cash Payment</u>.  Cash payments made pursuant to the Plan shall be by check, wire or ACH transfer in U.S. funds or by other means agreed to by the payor and payee or, absent agreement, such commercially reasonable manner as the payor determines in its sole discretion.

8.15    <u>Setoffs</u>.  Except as otherwise provided for herein, the Litigation Trustee or Plan Administrator, as applicable, may, but shall not be required to, set off against any Claim and the payments to be made pursuant to this Plan in respect of such Claim, claims of any nature

whatsoever that a Debtor or its Estate may have against the Creditor, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by a Debtor or its Estate of any claim it may have against the Creditor.

## ARTICLE IX
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

9.1 <u>Leases and Contracts</u>. Any and all pre-petition leases or executory contracts not previously rejected by a Debtor, unless (i) specifically assumed pursuant to order(s) of the Bankruptcy Court prior to the Confirmation Date; or (ii) is the subject of a motion to assume or assume and assign pending on the Confirmation Date; or (iii) is expressly identified on the Assumption Schedule, shall be deemed rejected by such Debtor on the Confirmation Date; provided, however, that nothing in this Article IX shall cause the rejection, breach, or termination of any contract of insurance benefiting a Debtor or its Estate.

9.2 <u>Rejection Damage Claims</u>. All proofs of claim with respect to claims arising from the rejection of executory contracts or leases shall, unless another order of the Bankruptcy Court provides for an earlier date, be filed with the Bankruptcy Court within thirty (30) days after the mailing of notice of entry of the Confirmation Order.

## ARTICLE X
## CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN

10.1 <u>Financing Condition</u>. Depending on whether the Financing Condition is satisfied, the Plan will be consummated as either a Liquidation or a Restructuring. If the Financing Condition is satisfied or waived, the Plan will be consummated as a Restructuring. If the Financing Condition is not timely satisfied or waived, the Plan will be consummated as a Liquidation.

10.2 <u>Conditions to Consummating a Liquidation</u>. The Plan will be a plan of liquidation, and the Debtors will consummate the Liquidation in accordance with Article VII and the other applicable provisions of the Plan, upon the satisfaction (or waiver, as set forth below) of each of the following conditions has been satisfied any one or more of which conditions may occur contemporaneously with the occurrence of the Effective Date:

(a) the Bankruptcy Court shall have entered the Confirmation Order;

(b) the Confirmation Order shall have become a Final Order; and

(c) each of the Plan Supplement documents shall have been executed in accordance with its terms.

10.3 <u>Additional Condition to Consummating a Restructuring</u>. The Plan will be a plan of reorganization, and the Debtors will consummate the Restructuring in accordance with Article VI and the other applicable provisions of the Plan, upon the satisfaction (or waiver, as set forth below) of each of the conditions precedent enumerated in Section 10.2 *plus* the following condition (the "***Financing Condition***"), which may occur contemporaneously with the occurrence of the Effective Date:

(a)     New Secured Financing, if needed, shall have been fully consummated and funded before the expiration of forty-five (45) days after the Confirmation Date.

The Committee may waive the Financing Condition upon a determination that New Secured Financing is not necessary to either to consummate the Restructuring or otherwise ensure the feasibility of the Plan.  If the Financing Condition is not satisfied or waived on or prior to the expiration of forty-five (45) days after the Confirmation Date, then the Debtors shall consummate the Liquidation if all other conditions enumerated in Section 10.2 are timely satisfied or waived.

10.4     <u>Waiver of Conditions</u>.  The Committee, in its sole discretion, may at any time, without notice or authorization of the Bankruptcy Court, waive the condition set forth in Sections 10.2(b) above. The failure of the Committee to satisfy or waive such condition may be asserted by the Committee regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Committee). The Committee reserves the right to assert that any appeal from the Confirmation Order shall be moot after consummation of the Plan.

10.5     <u>Effect of Failure of Condition</u>.  In the event that the condition  specified  in Section 10.2(b) of the Plan has not occurred or been waived on or before forty-five (45) days after the Confirmation Date, the Confirmation Order may be vacated upon order of the Bankruptcy Court after motion made the Committee or any party in interest.

## ARTICLE XI
## RETENTION OF JURISDICTION

Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Post-Confirmation Debtor, Litigation Trustee or Plan Administrator, as applicable, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)     <u>Claims</u>.  To determine the allowability, classification, or priority of Claims against a Debtor upon objection by the Post-Confirmation Debtor, Litigation Trustee or Plan Administrator, as applicable.

(b)     <u>Injunctions</u>.  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Cases on or before the Effective Date with respect to any Entity.

(c)     <u>Fee Claims</u>.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before or after the Effective Date, as provided for in the Plan.

(d)     Dispute Resolution.  To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of distributions thereunder.

(e)     Leases and Executory Contracts.  To determine any and all motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and to determine the allowance of any Claims resulting from the rejection of executory contracts and unexpired leases.

(f)     Actions.  To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted prior to the closing of the Chapter 11 Cases, including any remands.

(g)     Causes of Action.  To determine any and all "Causes of Action" as defined under Section 1.14 of the Plan.

(h)     Taxes.  To hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146.

(i)     General Matters.  To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code, including but not limited to in connection with the sale or liquidation of Assets by the Post-Confirmation Debtor.

(j)     Plan Modification.  To modify the Plan under Section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes.

(k)     Aid Consummation.  To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code.

(l)     Implementation of Confirmation Order.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated.

(m)     Final Decree.  To enter a Final Decree closing the Chapter 11 Cases.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.1     Pre-Confirmation Modification.  The Plan may be altered, amended or modified by the Committee and Trustee before the Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

12.2     Post-Confirmation Immaterial Modification.  The Post- Confirmation Debtor may, with the approval of the Bankruptcy Court and without notice to Holders of Claims and Interests,

insofar as it does not materially and adversely affect the interest of Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan.

12.3    Post-Confirmation Material Modification.  The Plan may be altered or amended after the Confirmation Date by the Post-Confirmation Debtor in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, provided that such alteration or modification is made after a hearing as provided in Section 1127 of the Bankruptcy Code.

12.4    Withdrawal or Revocation of the Plan.  The Committee and Trustee reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Committee and Trustee revoke or withdraw the Plan, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred.

12.5    Binding Effect.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Interest in, a Debtor and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not such Holder is entitled to a distribution under the Plan.

12.6    Successors and Assigns.  The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Entities.

12.7    **Exculpation.  Except as otherwise expressly provided by the Plan or the Confirmation Order or other Final Order of the Bankruptcy Court, on the Effective Date, the Exculpated Parties and each of their respective agents, representatives, successors and assigns, shall be deemed released is released and exculpated from any claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, or arising out of, the Chapter 11 Cases, including, without limiting the generality of the foregoing, all sales of assets, the Disclosure Statement, the formulation, dissemination and pursuit of approval of the Disclosure Statement, the formulation, dissemination and pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions that constitute willful misconduct, gross negligence or fraud, and all such Persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.**

12.8    **Voluntary Releases by the Releasing Parties.  Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the restructuring contemplated by the Plan, and the compromises contained herein, on and after the Effective Date, to the fullest extent permitted by applicable law, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) will be deemed to conclusively, absolutely, unconditionally, irrevocably, and forever release, waive, and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action,**

remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the business of the Debtors, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or, in each case, related agreements, instruments, or other documents, any action or omission as an officer, member, agent, representative, fiduciary, controlling person, affiliate, or responsible party, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, fraud, or a criminal act. Nothing in this provision shall be construed or otherwise operate to release any claim or Cause of Action that may be held by the Debtors, the Bankruptcy Estates, or the Reorganized Debtor.

Each of the Releasing Parties will be deemed to have granted the releases set forth in this section notwithstanding that such Releasing Party may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Releasing Party expressly waives any and all rights that they may have under any statute or common law principle that would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of execution of such release.

12.9 **Injunction**. Except as otherwise expressly provided in the Plan, on and after the Confirmation Date, all Entities who have held, hold or may hold Claims against a Debtor or Interests in a Debtor are permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting a Debtor's Estate, the Post-Confirmation Debtor, or any of the Released Parties, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities, including without limitation the Litigation Trustee and Plan Administrator, or any property of any such transferee or successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree or order against a Debtor's Estate, the Post-Confirmation Debtor, or any of the Released Parties, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Entities, including without limitation the Litigation Trustee and Plan Administrator; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor's Estate, the Post-Confirmation Debtor, or any of the Released Parties, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Entities, including without

**limitation the Litigation and Plan Administrator; (d) asserting any right of setoff, of any kind, directly or indirectly, against any obligation due to a Debtor's Estate, the Post-Confirmation Debtor, or any of the Released Parties, any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Entities, including without limitation the Litigation Trustee and Plan Administrator; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan. Unless otherwise provided in the Confirmation Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect until the Effective Date; provided, however, that no such injunction or stay shall preclude enforcement of any interested party's rights under the Plan and the related documents.**

12.10    <u>Cramdown</u>.  To the extent any Impaired Class of Claims or Interest Holders entitled to vote on the Plan votes to reject the Plan, the Committee and Trustee reserve the right to request confirmation of the Plan under Section 1129(b) of the Bankruptcy Code with respect to such Class.

12.11    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Texas.

12.12    <u>United States Trustee Fees</u>.  All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtors on or before the Effective Date. Thereafter, the Litigation Trustee or Plan Administrator, as applicable, shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a final decree or an order converting or dismissing the Chapter 11 Cases.

12.13    <u>Notices</u>.  Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

To:    The Post-Confirmation Debtor:

    Rooftop Group International Pte. Ltd.
    5218 Spruce Street
    Bellaire, TX 77401

With a copy to:

    James E. Van Horn
    Barnes & Thornburg LLP
    1717 Pennsylvania Avenue NW, Suite 500
    Washington, D.C.  20006-4623

    and

    Rachael L. Smiley

Ross & Smith, PC
700 North Pearl Street, Suite 1610
Dallas, Texas 75201

12.14 <u>Non-Voting Equity Securities</u>. To the extent applicable, the Debtors shall comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code.

12.15 <u>Retiree Benefits</u>. From and after the Effective Date, to the extent required by Section 1129(a)(13) of the Bankruptcy Code, the Post-Confirmation Debtor shall continue to pay all retiree benefits (as defined in Section 1114 of the Bankruptcy Code), if any, established or maintained by a Debtor prior to the Effective Date. The Committee and Trustee believe that there are no such benefits.

12.16 <u>Saturday, Sunday, or Legal Holiday</u>. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

12.17 <u>Section 1146 Exemption</u>. Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the revesting, transfer or sale of any real or personal property of a Debtor pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Without limiting the foregoing, pursuant to Section 1146(a) of the Bankruptcy Code, the sale by the Post-Confirmation Debtor, Litigation Trustee or Plan Administrator, as applicable, of any real property, or recordation by the Post-Confirmation Debtor, Litigation Trustee or Plan Administrator, as applicable, of any deed of trust or mortgage (including any amendment to any deed of trust or mortgage), from and after the Effective Date of the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

12.18 <u>Severability</u>. If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the option of the Committee and Trustee remain in full force and effect and not be deemed affected. However, the Committee and Trustee reserve the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.19 <u>Headings</u>. The headings used in this Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions of the Plan.

12.20 <u>Waiver of Stay</u>. The Committee and Trustee request as part of the Confirmation Order a waiver from the Bankruptcy Court of the fourteen day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the fourteen day stay of Bankruptcy Rule 6004(h)).

12.21 <u>No Release by United States Government, Agencies, State or Local Authorities</u>. Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

**ARTICLE XIII**
**CONFIRMATION REQUEST**

The Committee and Trustee hereby requests confirmation of the Plan pursuant to Section 1129(a) of the Bankruptcy Code.

Dated:  June 3, 2020

Official Committee of Unsecured Creditors of
Rooftop Group International Pte. Ltd.


By:   */s/ Sian Mimmo*
          Name: Sian Mimmo
          Title:   Chair
                   Official Committee of Unsecured
                   Creditors of Rooftop Group
                   International Pte. Ltd.

Chapter 11 Trustee, Rooftop Group USA, Inc., and
Rooftop Group Services (US) Inc.


By:   */s/ Daniel J. Sherman*
          Name: Daniel J. Sherman

Submitted by:

Judith W. Ross
State Bar No. 21010670
Rachael L. Smiley
State Bar No. 24066158
ROSS & SMITH, PC
700 North Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email:    judith.ross@judithwross.com
              rachael.smiley@judithwross.com

James E. Van Horn
(admitted *pro hac vice*)
BARNES & THORNBURG LLP
1717 Pennsylvania Avenue NW, Suite 500
Washington, D.C.  20006-4623
Telephone: 202-371-6351
Facsimile: 202-289-1330
Email:    jvanhorn@btlaw.com

**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ROOFTOP GROUP INTERNATIONAL PTE. LTD., Case No. 19-43402-mxm11**

Daniel J. Sherman
State Bar No. 18241000
SHERMAN & YAQUINTO, L.L.P.
509 N. Montclair Avenue
Dallas, TX 75208-5498
Telephone: 214-942-5502
Facsimile: 214-946-7601
Email: Corky@syllp.com

**CHAPTER 11 TRUSTEE, ROOFTOP GROUP USA, INC., Case No. 19-44234-mxm11, and ROOFTOP GROUP SERVICES (US) INC., Case No. 19-44235-mxm11**